O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| YOLANDA P. AGUILAR, | ) | Case No. EDCV 08-0514-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Yolanda Aguilar seeks judicial review of the Commissioner's denial of her application for disability insurance benefits under the Social Security Act. For the reasons stated below, the decision of the Social Security Commissioner is **AFFIRMED**.

**I. Facts and Procedural History**

Plaintiff filed an application for disability insurance benefits on November 21, 2005, alleging a disability onset date of January 1, 2000, due to limitations and pain resulting from musculoskeletal impairments. (Joint Stip. 1.) Plaintiff was born on December 16, 1971, and she has a

high school education. (Administrative Record ("AR") 21, 71.) Plaintiff previously worked as a medical assistant/technician, and she has not been gainfully employed since 2000. (AR 22-24.) Plaintiff's date last insured ("DLI") to qualify for benefits is June 30, 2004.

The Commissioner denied Plaintiff's application on March 1, 2006, and again on May 31, 2006, upon reconsideration. (AR 10.) Administrative Law Judge ("ALJ") Joseph Schloss held a hearing on October 29, 2007, at which Plaintiff testified and was represented by counsel. (AR 19.) A vocational expert also testified at the hearing. After applying the five-step sequential analysis mandated by the Social Security regulations,[1] the ALJ concluded that Plaintiff was not disabled and denied her application for benefits on November 21, 2007. (AR 7.) The ALJ found that Plaintiff's only severe impairment within the meaning of the regulations was degenerative disc disease of the lumbar spine, concluding that Plaintiff's depressive disorder was non-severe and that the evidence supporting her claimed fibromyalgia was insufficient to establish a medically determinable impairment. (AR 12.)

The ALJ determined that Plaintiff's degenerative disc disease did not meet or equal any listed impairment. (*Id.*) The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to lift twenty pounds occasionally and ten pounds frequently and to stand, walk, or sit for six hours out of an eight-hour workday, with occasional

---

[1]   The five steps are as follows: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairment is "severe"; (3) whether the impairment meets or equals one of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant is able to return to past relevant work; and (5) whether the claimant can do other types of work. 20 C.F.R. § 404.1520(a)(4). These steps are cumulative, meaning that the ALJ need not consider further steps after finding that a step does not favor the claimant.

climbing, balancing, stooping, kneeling, crouching, and crawling, and no working at heights or with hazardous machinery. (AR 13.) The ALJ conlcuded that Plaintiff could return to her past relevant work as a medical technician and, therefore, was not disabled under the Social Security Act. (AR 18.)

The Social Security Administration Appeals Council denied Plaintiff's request for review on February 26, 2008, and Plaintiff filed this action on April 15, 2008. Plaintiff alleges that the ALJ erred by giving insufficient weight to the treating physician's opinion and by improperly discounting Plaintiff's credibility. (Joint Stip. 2-3.) Plaintiff asks this Court to remand for further proceedings. (Joint Stip. 13.)

## II. Standard of Review

The Court must uphold the Social Security Administration's disability determination unless it is not supported by substantial evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or

3

reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Discussion**

> **A.    The ALJ Properly Considered the Medical Records and Treating Physician's Opinion**

Plaintiff claims that the ALJ erred by failing to adequately consider the medical evidence. Specifically, Plaintiff contends that the ALJ improperly rejected the opinion of her treating physician, Sarah Hwang, M.D., and did not consider the significance of Plaintiff's April 7, 2006, MRI and an August 4, 2006, EMG. (Joint Stip. 4.) Plaintiff's claims are without merit.

The medical records Plaintiff provided to establish her treatment history prior to June 30, 2004, are minimal. Plaintiff submitted records showing treatment before that date from a single clinic, which show that Plaintiff visited the clinic three times in 2004, on April 13, April 27, and July 28. (AR 114-16.) Plaintiff sought treatment on those dates for chest discomfort, back and throat pain, and a urinary tract infection. (*Id.*) Plaintiff provided no other medical records reflecting treatment prior to the date last insured.

The records show that Plaintiff did not seek any treatment from July 28, 2004, until October 21, 2005, nearly sixteen months after the DLI, when Plaintiff visited Dr. Hwang for the first time. (AR 181-90.) According to Dr. Hwang's treatment notes, Plaintiff's chief complaint initially was pain in her hands and feet, which the notes indicate began in May 2005. (AR 181, 187.) Plaintiff also reported ongoing back pain resulting from a work-related injury from 1998, for which Plaintiff previously received physical therapy and epidural injections. Dr. Hwang

4

eventually diagnosed Plaintiff with fibromyalgia and continued treating her on a monthly to bimonthly basis. (AR 132.)

A non-examining state agency physician, F. Kalmar, M.D., reviewed Plaintiff's medical records on December 29, 2005. (AR 118-25.) Dr. Kalmar opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, and she could sit for six hours in an eight-hour day, with no manipulative, visual, or communicative limitations. (*Id.*) Dr. Kalmar limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, with limited exposure to hazards such as machinery and heights. (AR 120, 122.) A second non-examining physician affirmed this assessment on February 23, 2006. (AR 125.)

On January 14, 2006, Plaintiff visited a physical therapist, complaining of back pain and extremity weakness, with a reported onset date of June 2005. (AR 127.) The physical therapist diagnosed arthropathy. (*Id.*) X-rays taken on January 18, 2006, revealed no abnormality in Plaintiff's lumbar spine, hands, feet, or sacroiliac joints. (AR 191-96.) An MRI taken on April 7, 2006, showed mild degenerative disc disease at L1-2 and L2-3, along with disc desiccation at L4-5 and L5-S1. (AR 137, 131.) The MRI also showed a three to four millimeter disc protrusion causing left L3 nerve root impingement at the L2-3 disc level. The remainder of the findings were normal. (*Id.*)

On July 19, 2006, Dr. Hwang completed a fibromyalgia residual functional capacity questionnaire. (AR 132-36.) Dr. Hwang opined that Plaintiff could sit for fifteen minutes and stand for five minutes, sitting for a total of two hours in an eight-hour day and standing or walking for less than two hours in an eight-hour day. (AR 134.) Dr. Hwang further opined that Plaintiff would need to walk around for one to

two minutes every fifteen minutes with a cane or assistive device, and that Plaintiff would need to lie down for five minutes every thirty minutes. (*Id.*) Dr. Hwang also limited Plaintiff's reaching, handling, and fingering capabilities, along with her ability to lift anything over ten pounds. (AR 135.) Dr. Hwang stated that Plaintiff would miss work more than four days per month as a result of her impairments. (*Id.*)

Plaintiff also underwent neurophysiologic EMG testing on August 4, 2006, after which she was diagnosed with mild right chronic L4 radiculopathy. (AR 139-42.) On August 24, 2006, Plaintiff met with Zafar S. Khan, M.D., for a spine consultation, and she was diagnosed with lumbar radiculopathy. (AR 159-60.) An MRI taken on September 29, 2006, revealed mild disc desiccation at L1-L2 and L2-L3, diffuse disc desiccation at L5-S1, and small one millimeter disc protrusions at L2-L3 and L4-L5. (AR 162.) Dr. Khan diagnosed degenerative disc disease. (*Id.*)

Plaintiff consulted with George ElKhoury, M.D., for pain management on March 11, 2007, complaining of back and leg pain. (AR 144-49.) Dr. ElKhoury administered an epidural block on March 12, 2007, and recommended Plaintiff return in six weeks for follow-up treatment. (AR 154.) Plaintiff also received treatment from a chiropractor, Richard Ochart, D.C., between May 1, 2007, and July 17, 2007, after she was in a car accident on April 23, 2007. (AR 165-79.) Plaintiff reported pain in her lower back, neck, and left lower extremity. (AR 173.)

After reviewing the medical evidence and considering Plaintiff's testimony, the ALJ concluded that Plaintiff's only medically determinable, severe impairment prior to the DLI was degenerative disc disease of the lumbar spine. (AR 12.) The ALJ based this conclusion on the complete absence of evidence of fibromyalgia or other severe physical or mental impairment before 2005, except for Plaintiff's own

1   statements of a back injury from 1998. (AR 17.)

2       To be eligible for disability benefits, Plaintiff must demonstrate

3   that she was disabled on or before the DLI, which is June 30, 2004. *See*

4   *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998)(citing *Johnson v.*

5   *Shalala*, 60 F.3d 1428, 1432 (9th Cir. 2005)). As outlined above,

6   virtually all of the medical records Plaintiff provided reflected

7   treatment she received significantly beyond the DLI. The records

8   preceding the DLI do not establish the existence of fibromyalgia,

9   debilitating pain, or any other disabling impairment. Moreover, Dr.

10  Hwang and a physical therapist both noted a reported onset date for

11  Plaintiff's specific complaints as May or June 2005, almost a year after

12  the DLI. (AR 127, 181.) Plaintiff's claim that her debilitating symptoms

13  arose prior to the DLI, but that "the diagnosis of fibromyalgia simply

14  was not made by her treating physicians until 2005" is not supported by

15  the record. (Joint Stip. 3.)

16      Plaintiff argues that the ALJ failed to properly consider the April

17  7, 2006, MRI or the August 4, 2006, EMG. Although the ALJ clearly

18  considered both of these reports, Plaintiff contends that the ALJ missed

19  the "significance" of the reports, without providing any explanation of

20  what that significance might be. The reports indicate that Plaintiff

21  suffered from mild radiculopathy, degenerative disc disease, and a

22  slight disc protrusion in mid-2006, two years after the DLI. (AR 131,

23  142-43.) Neither of these reports, particularly given the mild objective

24  findings, shed light on Plaintiff's level of impairment prior to June

25  30, 2004. The Court concludes that the ALJ gave these reports the

26  appropriate consideration in reaching the disability determination and

27  that decision is supported by substantial evidence in the record.

28      Plaintiff argues that the ALJ failed to give clear and convincing

reasons for rejecting the opinion of her treating physician, Dr. Hwang. (Joint Stip. 4.) The ALJ should generally accord greater probative weight to a treating physician's opinion than to opinions from non-treating sources. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion. *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

As discussed above, the ALJ assigned minimum probative value to Dr. Hwang's opinion as to the extent of Plaintiff's limitations and relied instead on the non-examining state agency physician's opinion that Plaintiff was only mildly functionally limited. (AR 16-18.) The ALJ concluded that Dr. Hwang's opinion did not provide any information regarding the extent of Plaintiff's impairment prior to the DLI, and, even if it did, the opinion was contradicted by the objective medical evidence. (AR 17-18.) Contrary to Plaintiff's assertion, the ALJ gave a number of specific reasons for rejecting Dr. Hwang's opinion, the accuracy of which Plaintiff does not dispute. These include the following: (1) although Dr. Hwang opined that Plaintiff had osteoarthritis of the right knee, the x-rays were normal; (2) Dr. Hwang concluded that Plaintiff had carpal tunnel syndrome, but the record contained no objective findings to support the conclusion; (3) Dr. Hwang opined in her RFC assessment that Plaintiff required an assistive device to walk, but there was no objective evidence in the record indicating

8

that an assistive device was necessary, and, further, Dr. Hwang never prescribed such device; and (4) if Plaintiff were as limited as Dr. Hwang indicated, the record should have revealed objective signs of muscle atrophy and wasting, which were absent. (*Id.*) These are clear and convincing reasons for rejecting Dr. Hwang's opinion that are supported by substantial evidence in the record. Plaintiff is not entitled to relief on this claim.

**B.   The ALJ Properly Assessed Plaintiff's Credibility**

Plaintiff argues that the ALJ improperly discounted her credibility in reaching the disability determination. In evaluating a claimant's assertions of subjective pain, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 135-36 (9th Cir. 2007). First, the ALJ must determine whether the objective medical evidence demonstrates the existence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter*, 504 F.3d at 1036 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)(en banc)). Second, if the claimant meets the first test and absent evidence of malingering, the ALJ may reject the alleged severity of the claimant's symptoms only by offering clear and convincing reasons for doing so. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). Where an individual's claimed functional limitations and restrictions due to the alleged symptoms are reasonably consistent with objective medical and other evidence in the case, the ALJ must credit the claimant's allegations. SSR 96-7p, 1996 WL 374186, at * 2 (S.S.A. July 2, 1996) (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).

At the hearing, Plaintiff testified that she was unable to work due

to widespread chronic pain and fatigue. (AR 25-26.) The ALJ determined that Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not credible, and he gave several clear and convincing reasons for his conclusion. (AR 14-15.) The ALJ noted that Plaintiff provided few medical records for the period before the DLI, and the records she did produce indicated only "transient complaints." (AR 15.) Although the ALJ concluded that the records provided did not establish the existence of any severe impairment before the DLI, he gave Plaintiff the benefit of the doubt and found she suffered from degenerative disc disease of the lumbar spine. (AR 12, 17.) However, the ALJ noted that Plaintiff sought no treatment whatsoever between July 28, 2004, and October 21, 2005, and she had never taken any intense pain medication. (*Id.*) In addition, the ALJ cited Plaintiff's claim in August 2007 that her knee pain nearly prevented her from walking, while x-rays showed her knees to be normal. (AR 16, 205.)

The ALJ is entitled to draw negative inference regarding a claimant's credibility arising from a failure to seek treatment, absent a reasonable justification for that failure. *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1464 (9th Cir. 1995). The Ninth Circuit recently stated:

> Our case law is clear that if a claimant complains about
> disabling pain but fails to seek treatment, or fails to follow
> prescribed treatment[] for the pain, an ALJ may use such
> failure as a basis for finding the complaint unjustified or
> exaggerated.

*Orn*, 495 F.3d at 638 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

10

Plaintiff claims that she has suffered from chronic pain sufficient to prevent her from working prior to the DLI, but she did not seek treatment for this pain until October 21, 2005, well after the DLI. The ALJ identified this failure as a reason for doubting the accuracy of Plaintiff's statements, a conclusion that is supported by substantial evidence in the record. Accordingly, the ALJ gave specific, clear, and convincing reasons for discounting Plaintiff's credibility, and she is not entitled to relief on this claim.

**IV.   Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED**.


DATED: January 13, 2009

MARC L. GOLDMAN

_____
MARC L. GOLDMAN
United States Magistrate Judge